[L. A. No. 7665. In Bank.—September 14, 1927.]

JAMES C. WHITWORTH et al., Respondents, v. MICHAEL M. FERNANDEZ et al., Appellants.

[1] TITLE — REAL PROPERTY — ADVERSE POSSESSION — SUFFICIENCY OF EVIDENCE.—In this action under section 749 of the Code of Civil Procedure to determine adverse claims to real property, it is held that the evidence was ample to justify the finding of payment by plaintiffs and their predecessors in interest of all taxes levied or assessed against the property for the five-year period which completed the title by adverse possession in the plaintiffs.

[2] ID.—NATURE OF ACTION—REMEDIES.—Although the plaintiffs in such case might have more properly brought a suit or suits of a different character, where the evidence justifies the findings and the judgment rendered, the judgment will not be reversed on appeal in order that a more appropriate remedy be sought.

---

(1) 2 C. J., p. 276, n. 59.    (2) 4 C. J., p. 927, n. 40.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. H. De La Monte, Walter W. Little and Hewitt, McCormick & Crump for Appellants.

C. L. Kilgore, Chandler, Wright & Ward and Jefferson P. Chandler for Respondents.

PRESTON, J.—This is an action by plaintiffs under section 749 of the Code of Civil Procedure to determine adverse claims to what is known as lot 13 of the Whitworth tract, county of Los Angeles. The real dispute centers around the easterly 42.1 feet of said lot 13.

It appears that on the twentieth day of January, 1883, and for some time prior thereto, one Christopher Greve was the owner of a tract of land situated in the westerly portion of what is officially known as lot 1 of the Rancho Rodeo de las Aguas, lying north of Eberle Road, now known as Pico Road; that on the twentieth day of January, 1883, said Greve granted to Joseph Whitworth the westerly portion of said subdivision of said lot 1, described as follows: "Beginning at the Southwest corner of the land now owned by Jas. A. Whitworth and being one of the corners of Lot number Two (2) of the Rancho Rodeo de las Aguas as recorded on Page 572 Book One (1) of the Miscellaneous Records of Los Angeles County; thence following the North line of Lot number Two (2) East 6.76 chains; thence South 4.52 chains to the North side of County road; thence North 76°, 54′ W. along North side of County road 7.94 chains to a stake, thence N. 2° 21′ East 4.48 chains to the place of beginning, Containing Three (3) acres of land more or less."

This conveyance made the easterly line of the Whitworth purchase the westerly line of said grantor Greve. Within a very short time after said purchase the two neighbors built through their joint efforts a fence along said line between their properties and also planted along the fence a row of eucalypti, both of which landmarks have remained for the past forty-odd years. Whitworth used the fence as a portion of the inclosure of the tract of land purchased by him and continuously since said purchase he and his successors in interest have cultivated and enjoyed the whole of said tract of land to said fence line without hindrance of any kind from said Greve and his successors in interest or anyone else except as hereinafter stated. Likewise, said Whitworth and his successors in interest have for more

than twenty years last past had said strip of land here in dispute set to walnut trees.

About the year 1910 said grantor Greve caused the remaining portion of his land in that vicinity, to wit, 16.22 acres, to be known as a portion of tract 470 and a map thereof to be duly and officially filed. Later, about 1911, the successors in interest of said Whitworth, who had died in 1904, caused to be made and filed .a map and plat of the property conveyed by said deed of 1883 and other lands and caused the same to be officially known on the records of Los Angeles County as the Whitworth tract. The strip of land here in dispute is, as above stated, the easterly 42.1 feet of said lot 13 of said Whitworth tract. These families were friends during their residence on these tracts and apparently the friendship between them still obtains, notwithstanding the acts and conduct of the defendant Michael M. Fernandez.

It appears that said Fernandez, in 1910 or 1911, discovered what he thought was a discrepancy in the descriptions in the deeds under which the respective parties to said tracts of land were claiming and induced said grantor Greve to cause to be put on the assessment-roll for the year 1911 the said strip of land as a separate assessment and it has continued to be separately assessed since said date—for some years to Greve and a few times to both Greve and Whitworth.

On the fifteenth day of February, 1915, said Greve and wife made a quitclaim deed to defendant Fernandez of all said strip of land and to a separate tract described also as part of said lot 13, but the evidence shows that Fernandez paid no consideration for said deed and took same for the purpose of attempting to get some money consideration from the Whitworths, agreeing to divide any money so received equally with Greve. Later Christopher Greve died and his widow and children and heirs at law also made a quitclaim deed to said strip of land to plaintiffs herein and likewise became witnesses for them in this cause, repudiating entirely, in so far as they could, the quitclaim deed made to Fernandez, and repudiating as well the conduct of Fernandez. In other words, it is apparent that the claim of Fernandez is wholly inequitable and entirely without moral justification.

It will be observed that in the description in the deed to Whitworth above mentioned, there are many discrepancies and uncertainties. Lot 2 is mentioned, which apparently should have been lot 1 of said Rancho. The starting point is uncertain and indefinite and the calls of the deed do not correspond to the fixed monuments therein mentioned. It is difficult to say whether it is the east line or the west line of said tract that is most in doubt. The acreage computed by the calls of the deed alone, disregarding fixed monuments, makes only 2.53 acres. The acreage computed to the fence line would make 3.63 acres, so the description "three acres more or less" may fit either description. Moreover, it is conceded that every element of adverse possession against the defendant Fernandez is present save and except alone the one of payment of taxes. This must be true because the uncontradicted evidence shows, as above stated, peaceful enjoyment by Whitworth and his predecessors in interest of this entire tract of land, adversely and under a claim of right, over a period of more than forty years.

The court found for the plaintiffs upon all points and found that taxes had been paid by them and their predecessors in interest for a continuous period of more than five years, to wit; for the years 1906, 1907, 1908, 1909, 1910, and 1911. During these years the evidence shows that on the tax receipts and tax-roll the land here in controversy was described as the west three acres of lot 1, but an examination of the block-books or record maps of the assessor shows that the property was described as "3 acres more or less." The assessment during those years covering property of Greve did not necessarily include property west of the fence line between the two land owners. The Greve property was assessed as 16.22 acres and there is no contention that the 42.1 foot strip is necessary to complete this acreage.

[1] We therefore conclude that there was ample evidence to justify the trial court in finding the payment by plaintiffs and their predecessors in interest of all the taxes levied or assessed against the said property for the five-year period mentioned. This finding of the court completed the elements required by the law to establish a title by adverse possession as of that date even though not founded upon an instrument. As against Greve, the predecessor of

defendant Fernandez, the title became a perfect one at that time in the predecessors of plaintiffs. The defendant Fernandez claims only under his predecessor Greve. [2] It is perhaps worth noting that plaintiffs might more properly have brought a suit or suits of a different character and obtained the same or equivalent relief. For example, a suit to compel a proper conveyance or a suit to establish by parol testimony an agreed boundary line where the true boundary was uncertain. But we are of the opinion that the evidence justifies the findings made and the judgment rendered thereon by the court below. This being true, there is no need for a reversal of the judgment in order that a more appropriate remedy be sought. We feel the more positive of this position in view of the fact that the evidence shows without contradiction the claim of defendant Fernandez to be without a semblance of merit in it. These views render it unnecessary to consider the effect of the quitclaim deed from the successors in interest of Greve to plaintiffs intended to nullify the quitclaim deed to defendant Fernandez.

Judgment affirmed.

Langdon, J., Curtis, J., Richards, J., Waste, C. J., Seawell, J., and Shenk, J., concurred.

Rehearing denied.