James Coplea, Appellee, v. Earl Bybee and Herman A. Greenawalt, Appellants.

Gen. No. 9,024.

Opinion filed April 16, 1937.

ACTON, ACTON & BALDWIN, of Danville, for appellants; W. M. ACTON, of counsel.

DAVID ALLISON and WALTER V. DYSERT, both of Danville, for appellee; J. R. DEAN, of Danville, of counsel.

MR. JUSTICE DAVIS delivered the opinion of the court.

Appellant, Earl Bybee, recovered a judgment against James Coplea, appellee, for $145.62 in the court of Henry E. Brown, a justice of the peace, upon which an execution was issued and placed in the hands of Herman A. Greenawalt, a constable, who served the same on October 22, 1934, and levied upon certain personal property of appellee, at which time appellee was served with a copy of said execution, containing a notice that he must file a schedule of his property within 10 days from service thereof in order to be entitled to claim his exemption.

On October 26, 1934, appellee delivered a schedule of his personal property to said constable. Thereupon three men were selected to appraise said property, who,

after making said appraisement, filed the same with said constable.

It was claimed by appellee that the appraisal was illegal because one of the appraisers was wholly disqualified to act for the reason he was not a householder, and that the appraisers put some of the property together instead of listing and appraising it separately, so as to deprive the plaintiff of his right of selection. Appellee filed an affidavit with Ben G. Seibert, a justice of the peace, alleging that he was entitled to the possession of certain personal property, being the property taken by Herman A. Greenawalt, on the execution issued in the case of *Bybee v. Coplea* in the justice court of Henry E. Brown, and that Herman A. Greenawalt, constable, wrongfully detains the goods and chattels from him, the said Coplea, and that said goods and chattels were not seized under any execution or attachment against the goods and chattels of said James Coplea liable to execution or attachment.

Said justice of the peace, Ben G. Seibert, issued a writ of replevin for said property, which was served upon Greenawalt by Don R. Sizelove, a constable; and thereupon Greenawalt with Earl Bybee, as surety, delivered to said constable serving said writ a forthcoming bond, as permitted by statute.

Upon the trial of said cause a judgment was entered in favor of plaintiff, Coplea, and against the defendant, Greenawalt, for a return of the property. No appeal was taken from said judgment, and the time in which an appeal might be taken had expired. A writ of *retorno habendo* was issued out of the court of Harold A. Craig, a justice of the peace, before whom said case was tried on a change of venue from Ben G. Seibert, which was served upon defendant, Greenawalt, by D. R. Sizelove, constable, on December 10, 1934, and said Greenawalt failed and refused to deliver said goods and chattels to said constable; that Greenawalt and

Bybee, after Greenawalt refused to surrender said property, sold the same under said execution and reported in writing to appellee that said property had been sold for $263, and tendered to him $68.32, the balance received from the sale of said property after deducting the amount of said execution and costs.

Plaintiff appellee commenced this suit against Earl Bybee and Herman A. Greenawalt by filing a complaint on January 8, 1935, alleging among other things the foregoing facts and charging that from the time said writ of *retorno habendo* was served upon said Greenawalt the defendants had no legal right to further detain said property; that by reason thereof the plaintiff was injured and damaged; that said execution was issued in favor of Earl Bybee and said levy and the sale was for his use and benefit and at his request; that the sale of said property and the refusal to turn it over to the constable, Sizelove, under the writ of *retorno habendo* was wanton, wilful and malicious on the part of both defendants, and for the purpose of oppressing and depriving the plaintiff of the value of his property without due process of law and through the malicious abuse of said execution in so selling the property of plaintiff.

In answer to the complaint defendants admit that Bybee obtained a judgment against James Coplea for $145.36 and that an execution thereon was placed in the hands of Herman A. Greenawalt, constable, who served the same on appellee on October 22, 1934; that appellee delivered to said constable a schedule of all of his personal property on said date; that said property was appraised. Defendants deny that they knew said appraisal was illegal and unlawful, and deny that one of the appraisers was disqualified under the law because he was not a householder; allege that each of said appraisers were householders. They admit the filing of the affidavit by plaintiff and the replevying of the property and the trial before the justice of the

peace and a judgment for the return of all of said property, and that no appeal was taken from said judgment, and that the time provided for appeal by law had expired. They deny that they maliciously, wilfully and unlawfully abused said civil process of said court under which they procured possession of said property for the purpose of oppressing and wronging plaintiff, and deny they refused to surrender said property and return the same under said forthcoming bond; and deny they illegally, unlawfully, wilfully, wantonly and maliciously pretended to sell said property and dispose of the same and convert it into cash under said execution, but admit that said property was sold by the defendant, Greenawalt, as hereinafter set forth, and that he tendered the plaintiff the sum of $68.32; admit that a writ of *retorno habendo* was issued; deny that defendant had no legal authority to sell said property, and alleged that all their actions were legal; aver that, after judgment was entered by Harold A. Craig, justice of the peace, the defendant, Greenawalt, did on November 21, 1934, return all of the property mentioned in said judgment in trucks to a point on the public highway from which a lane extended to the property of plaintiff and was starting into said lane to deliver said property to plaintiff and that he met Greenawalt and he refused to let him enter on said premises to deliver the property.

That on November 20, 1934, justice of the peace, Henry E. Brown, summoned three householders to appraise the property described in the schedule filed by plaintiff, and that said appraisers appeared and were present at the time said Greenawalt returned and offered to deliver to plaintiff the goods and chattels mentioned in said judgment of replevin and that plaintiff met said appraisers and ordered them not to come upon his premises and refused to let them enter his premises and see said goods and chattels and appraise them.

Thereupon, after said demand upon plaintiff and his refusal to permit said goods and chattels to be appraised, the defendant, Greenawalt, levied upon said goods and chattels described in said judgment of replevin and, after giving notice, sold the same for $263.

Allege that the value of all of the personal property scheduled was $741.75; and, in addition to the property scheduled, the plaintiff had $50 in money he did not schedule, 50 bushels of corn and three heifers, and was guilty of filing a false schedule; and by reason of the actions of the plaintiff, above set forth, he is not entitled to any judgment against either of these defendants.

Appellee filed a replication in which he denied the new matters set up in the answer of the defendants. The jury returned a verdict in the amount of $800 in favor of the plaintiff and, upon a motion for a new trial, plaintiff remitted the sum of $300 and the court entered judgment in favor of the plaintiff for $500 and costs of suit, from which said judgment this appeal was taken.

It is admitted by the pleadings that the appellant, Bybee, obtained a judgment against appellee and that an execution issued on said judgment and was delivered to Greenawalt, constable, who served the same on appellee on October 22, 1934, and at the same time levied upon the property in question; that appellee delivered a schedule to Greenawalt on October 26, 1934; that three appraisers were appointed who appraised the property at $747.75; that appellee commenced a replevin suit before Justice Seibert, and that the case was taken on change of venue to Justice Craig, who tried the case on November 16, 1934, and ordered the property returned to appellee by Greenawalt; that no appeal was taken from said judgment and the time for appeal had expired; that a writ of *retorno habendo* was issued.

Greenawalt testified he had taken the property back to James Coplea's residence on November 21, 1934, in

two trucks, after the replevin suit was ended. That he saw Coplea in his barn lot, and told him he had come to deliver his cattle and stock back to him, and he said: "You are not coming in here." Greenawalt told him that the court had ordered its return; that he said, "He didn't care, you are not coming in here with it." He went back to the trucks and told the men to wait until he went to Potomac to call up to find out what to do. He called up Bybee to tell him what Coplea said, and Bybee told him to bring the stuff back to Danville. Greenawalt gave notice of sale and sold the property and reported the same to Coplea. All of the property that Greenawalt had taken was in the trucks. He testified that he went up there to redeliver the property. He didn't tell Coplea about reappraising the property on that day. Coplea told him to unload the property in the road. The reason the three appraisers were there was that they were going to appraise the property if Coplea would let them; they were going to unload it if he would let them appraise it, but he wouldn't so we brought it back to Danville and sold it.

Appellee testified that Greenawalt did bring back to his farm his stuff, after the replevin suit in Craig's court; they had two trucks and drove one truck off of the pavement at the end of the hard road, and drove the next truck just inside of the lane, and Greenawalt said: "I am going to unload this stuff, if we can make a new appraisement"; and I said, "I am not telling you what to do, but you can't make no new appraisement"; and I told them to unload the stuff right there. They turned around and took the stuff back. Greenawalt said he was going to unload the stuff if I would let him appraise it, and I said "I am not going to let you make a new appraisement." He said he was not going to unload it.

Appellants take the position that appellee alleges in his complaint that the property was exempt and that he himself was not in the wrong in preventing an ap-

praisement of the property; that appellee cannot recover damages for the sale of property claimed to be exempt without proving that it was exempt. They argue at length and cite many authorities relating to actions for recovery of damages for selling exempt property.

Appellants also contend in their reply brief that for the first time appellee takes the position that the cause of action is not an abuse of process in the sale of exempt property, but, on the contrary, the failure to return the property as directed in the writ of *retorno habendo*. That appellee cannot shift his ground to a different theory on appeal.

Although appellants tendered instructions on that theory of the case, that were given by the court, appellee tendered no instructions and there is nothing in the record showing that he sought to recover damages occasioned by the sale of exempt property.

In his complaint appellee sets forth what he alleges occurred from the time of the issuing and serving of the execution and seizure of the property up to and including the sale of the same, and charges appellant had no legal right to retain the property, and that he was injured and damaged through the wilful and malicious sale and disposition of his property by appellants; that the refusal to turn over the property to Constable Sizelove under the writ of *retorno habendo* was wanton, wilful and malicious on the part of appellants and for the purpose of oppressing and depriving appellee of the value thereof without due process of law, through the malicious abuse of said execution.

Appellee is not seeking to recover damages because appellants sold property of his that was exempt, but is seeking to recover damages for malicious abuse of civil process.

Two elements are necessary to an action for the malicious abuse of legal process:

First, The existence of an ulterior purpose; and

Second, An act in the use of the process not proper in the regular prosecution of the proceeding. *Bonney v. King,* 201 Ill. 47, 66 N. E. 377; *Keithley v. Stevens,* 238 Ill. 199, 87 N. E. 375.

''In a suit for an abuse of process it is not necessary to allege and prove that the action in which the process issued has terminated or that the judgment was vacated. A warrant valid on its face, issued in good faith upon a complaint sworn to by a party having a reasonable or probable cause for so doing, or an execution issued upon a valid judgment for a bona fide claim against a defendant, is no defense to an action for abuse of process, if there has been such abuse, after the issuing of the execution. This is so because an abuse of process exists when a party employs it for some unlawful object or purpose which it was not intended by the law to effect. The 'abuse of process,' as used in such cases means the perversion of it,—i. e., accomplishing some illegal object or purpose for which such process was not legally intended.'' *Dixon v. Smith-Wallace Shoe Co.,* 283 Ill. 234, 119 N. E. 265.

The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.

The civil injury for which appellee is seeking to recover damages is sometimes referred to as ''malicious abuse of process,'' and at other times as ''abuse of process.'' There is also some conflict of authority as to the necessity of averring and proving malice in cases of this character. The term ''malice'' in this connection is not to be given its ordinary meaning, but is to be extended so as to include wilfulness. Actual malice is unimportant if the process is wilfully used to accomplish the purpose intended, since unlawful acts wilfully done are to be deemed malicious as to those injured

thereby. Therefore, if process is wilfully used to accomplish a purpose not justified by the law, it is an abuse for which an action will lie. The abuse consists in the unlawful method by which the act is done, and the intentional use of this method constitutes malice in law. 1 Am. Jur. Abuse of Process, secs. 6 and 8.

Abusing the process of the law, to the injury of another, is of itself malicious. *Schaper v. Sutter,* 63 Ill. App. 257; *Cripe v. Pevely Dairy Co.,* 275 Ill. App. 231.

It is also held that in an action for abuse of legal process, it is not necessary to prove malice or want of probable cause, for the law will imply both, if an abuse is proven. *Wicker v. Hotchkiss,* 62 Ill. 107; *Phoenix Mut. Life Ins. Co. v. Arbuckle,* 52 Ill. App. 33.

After the court in the replevin suit adjudged plaintiff to be entitled to the possession of the property levied upon and ordered Greenawalt to return the same to him, Greenawalt, on November 21, 1934, conveyed the property in two trucks to a point on the public highway in front of the residence of appellee, from which a lane leads to his barn lot. On November 20, 1934, Henry E. Brown, justice of the peace, before whom the judgment against appellee was recovered, summoned three householders to appraise the property scheduled by appellee. Greenawalt had served notice upon appellee on November 20, 1934, notifying him that Brown had summoned Glen Albert, Richard Chasteen and Ira Albert as appraisers to appraise the goods and chattels scheduled and that said appraisers would appear at his residence on November 21, 1934, at 10 o'clock a. m. to appraise said goods and chattels, at which time he was to be present and have the property present for the purpose of appraisement. Said appraisers went with Greenawalt and were present when the trucks arrived, the two Alberts having driven the trucks.

Greenawalt went to Coplea's place to redeliver the property and he testified that the reason the three ap-

praisers were there was that they were going to appraise the property if Coplea would let them; they were going to unload it, if he would let them appraise it, but he wouldn't, so we took it back. Greenawalt only offered to return the property upon condition that appellee would let them appraise it. Under the terms of the judgment of the court appellee was entitled to the possession of the property and Greenawalt was ordered to return the same to him unconditionally and appellee was not required to accept the property with any conditions attached to the delivery thereof.

After appellee refused to accept the property on condition that he permit them to appraise the property scheduled, Greenawalt went to Potomac and called up Bybee, and Bybee told him to bring the property to Danville. Greenawalt then gave notice of sale and sold the property. Bybee gave him an indemnifying bond to protect him, before he sold the property.

Greenawalt was in possession of the goods and chattels replevied, by virtue of a bond given to Don R. Sizelove, constable, and was legally required under the law to deliver said goods and chattels, in accordance with the order of the court, in as good condition as it was when the action of replevin was commenced. Ill. State Bar Stats. 1935, ch. 119, ¶ 14; Jones Ill. Stats. Ann. 109.512; Smith-Hurd Ann. St., ch. 119, sec. 14.

From the time the property was replevied until the termination of the suit, the property may be regarded as in the custody of the law and the court has the right to see that it is not interfered with. *Knott v. People,* 83 Ill. 532; *Yott v. People,* 91 Ill. 11.

When the court in the replevin suit adjudged that appellee was entitled to the possession of the property and ordered Greenawalt to return the same to him, the levy of the execution was held illegal and the property was still regarded as in the custody of the law and was

not liable to be again seized upon execution until after the same was returned to the possession of appellee.

When appellant, Greenawalt, under the direction of Bybee, in disregard of the judgment of the court in the replevin suit wilfully refused to return the property to appellee and took the same back to Danville and levied said execution then in his hands upon said property, when the same was in the custody of the law and not subject to levy and sale under said execution, they were guilty of a malicious abuse of process.

Appellants further insist that the court erred in refusing to give instructions numbered seven and eight offered by them. We have examined these instructions and are of opinion that the court did not err in refusing to give them to the jury. Instruction No. seven has reference to matters that were settled in the replevin suit and could not be considered by the jury in determining the issues in the suit on trial and instruction No. eight was improper in form and assumed certain facts to be true. An instruction should be so drafted as to convey to the minds of the jury the correct principles of law applicable to the evidence submitted to them, in order that, having determined the final state of facts from the evidence, the jury may, by the application of the proper legal principles, arrive at a correct conclusion according to the law and the evidence.

Appellants contend that the damages awarded by the verdict of the jury are grossly excessive. That the jury acted with prejudice and passion and that the record contains no evidence of any wanton, wilful and malicious act that would justify such amount as punitive or exemplary damages, and deny that appellee could recover punitive or exemplary damages.

Although the authorities are not agreed upon the right to recover punitive or exemplary damages, yet, when an officer illegally levies an execution upon property at the instance and request of the plaintiff in the

execution, whose purpose it is to effect a sale of the property, even though illegally, exemplary damages may be recovered.

It is held in Illinois that where property is seized on execution without authority of law, the officer making the levy, and the plaintiff in the execution, if he directed, advised or encouraged the levy, will both be liable to the defendant in the execution, in an action of trespass, for all damages sustained; and if the seizure is wanton or malicious, punitive damages may be allowed. *McDaniel v. Fox*, 77 Ill. 343.

It was the duty of Greenawalt to act fairly and in good faith and not permit the plaintiff in the execution to cause him to do an illegal act in endeavoring to enforce the execution.

Prior to the commencement of the replevin suit Mr. Allison, attorney for appellee, asked Greenawalt to return the property. Greenawalt asked Bybee who his attorney was, and then went out and returned with Mr. Boyle who represented Bybee. Mr. Boyle examined the appraisement and advised Greenawalt it was his duty to return the property. Greenawalt still retained the property, and when the writ of replevin was served upon him he gave a forthcoming bond, with Bybee as surety, and after the judgment of the court in the replevin suit was entered directing him to return the property to appellee, he took the property in two trucks to a point on the highway where the lane leading to appellee's barn lot is located and offered to return the property on condition that appellee would let the appraisers whom he had in attendance value the scheduled property and, after appellee refused to receive the property under such conditions, he went and called up Bybee and was told by him to return the property to Danville, after which he returned to the farm of appellee and refused to return the property and took it back with him, and after procuring an in-

130

demnifying bond from Bybee for his own protection advertised and sold the property at the request of Bybee. All of which conduct plainly indicates a disposition on the part of appellant Bybee to retain the possession of and to sell the property in the hands of Greenawalt, notwithstanding the judgment of the court, and a willingness on the part of appellant Greenawalt to carry out the wishes of Bybee if he were kept harmless from damages.

In our opinion the jury was justified from the evidence in the record to find that the action of appellants was wilful and a malicious abuse of legal process and was warranted under the law in assessing exemplary damages, in addition to the actual damages suffered by appellee.

The judgment of the circuit court is affirmed.

*Affirmed.*